## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

MATTHEW M.,[1]          )
                             )
           Plaintiff,      )
                             )
vs.                       )      **Case No. 20-cv-559-DWD**
                             )
COMMISSIONER OF SOCIAL    )
 SECURITY,               )
                             )
           Defendant.     )

### MEMORANDUM AND ORDER

**DUGAN, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Income Security ("SSI") benefits pursuant to 42 U.S.C. § 423.

### Procedural History

Plaintiff applied for DIB and SSI in April 2017, alleging disability beginning on February 14, 2014 (Tr. 813). After holding an evidentiary hearing, Administrative Law Judge ("ALJ") Jason Panek denied the application for benefits in a decision dated June 5, 2019 (Tr. 627-644). The Appeals Council denied Plaintiff's request for review on May 6, 2020, making the ALJ's decision the final agency decision subject to judicial review (Tr.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

1

5).  20 C.F.R. § 404.981.  Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

### Applicable Legal Standards

To qualify for SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]  Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).  "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425

---

[2]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). Judicial review of the ALJ's decision is limited to determining whether the decision is "both supported by substantial evidence and based on the proper legal criteria." *Briscoe,* 425 F.3d at 351 (citing *Scheck v. Barnhart*, 336 F.3d 697, 699 (7th Cir. 2004); *Stephens*, 888 F.3d at 327 (The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law.").

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). Even if reasonable minds could differ as to whether the claimant is disabled, courts must differ to the ALJ's resolution if the opinion is adequately explained and supported by substantial evidence. *Beardsley*, 758 F.3d at 837; *Elder*, 529 F.3d at 413.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

## The ALJ's Decision

The ALJ followed the five-step analytical framework described above. Plaintiff was 41 years old on the alleged disability onset date (Tr. 642). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (Tr. 663). Plaintiff was insured for DIB through September 30, 2021 (Tr. 632).[3] The ALJ found that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, post laminectomy syndrome, lumbar radiculopathy, and recurrent diverticulitis (Tr. 634). The ALJ concluded that these impairments did not meet or equal a listed impairment (Tr. 636).

---

[3] The date last insured is relevant only to the claim for DIB.

The ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(h) except stand/walk 4 hours in an 8-hour workday, and with these additional qualifications:

> [Plaintiff] needs a change of position between standing or sitting every 30 minutes for 5 minutes, but does not need to be off task during these positional changes.  He cannot climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl.  He should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards.

(Tr. 636).  At step four, the ALJ relied on the testimony of a vocational expert ("VE") to find that Plaintiff could not do his past relevant work as a material handler (Tr. 642). However, at step five, the ALJ found that Plaintiff was not disabled because he was able to do other jobs that exist in significant numbers in the national economy (Tr. 642-44).

## The Evidentiary Record[4]

### *Plaintiff's Testimony*

Plaintiff lives in Alton, Illinois with his father (Tr. 656).  At the evidentiary hearing on May 14, 2019, Plaintiff testified that the primary reason he could not work was due to the pain in his back (Tr. 661, *see also* Tr. 902).  In 2011, Plaintiff had a laminectomy (Tr. 655).  In 2015, he underwent a spinal fusion (Tr. 655).  Prior to his alleged onset of disability, Plaintiff performed work at a heavy level of exertion (Tr. 660, Tr. 904).  In his functional report, Plaintiff stated that he now has difficulty lifting, squatting, bending,

---

[4]Plaintiff's issues on appeal focus on the ALJ's findings related to his degenerative disc disease of the lumbar spine, post laminectomy syndrome, and lumbar radiculopathy, in relation to Listing 1.04(A)(Doc. 15).  As such, this summary primarily concerns Plaintiff's physical impairments related to this issue and excludes some of the testimony and records related to Plaintiff's other impairments.  To the extent those other records are also relevant to the issues on appeal, they are referenced accordingly.

standing, reaching, walking, sitting, kneeling, stair climbing, and using stairs because of pain (Tr. 918).

Plaintiff testified that he was able to drive and can sit for approximately 20-30 minutes or stand for approximately one hour before needing to change positions (Tr. 656, 662-663).  He also stated that he can sometimes go for a walk outside, but that standing in one place is difficult (Tr. 662, 663).  Plaintiff testified that he cannot lift 20 pounds but can carry a couple gallons of milk (Tr. 663). Plaintiff stated that he sometimes needs to lay down and take a nap for 15 minutes to one or two hours during the day to relieve his back pain and that he takes pain medicines, including gabapentin and Percocet (Tr. 663-64).  Plaintiff stated that he has not completed much physical therapy since his back surgery in 2015, and he has not seen any pain specialists since he was referred in 2018 (Tr. 666).  Plaintiff testified that he could not afford injections or any further pain treatment right now (Tr. 665).

<u>*Medical Records*</u>

On February 17, 2014, Plaintiff saw his primary care provider after reporting a three-day history of back pain attributed to a work-related injury (Tr. 1017).  Dr. Gutmann noted sciatica with mild left paraspinal tenderness and decreased left knee reflect (*Id*.). In April 2014, Dr. Kennedy documented diminished range of motion and positive left straight leg raising but with grossly normal motor and sensory deficits (Tr. 1283). Plaintiff received physical therapy (Tr. 1282) and pain management, which included receipt of Percocet and epidural steroid injections in September and October 2014 (Tr. 1304-1312, Tr. 1316).

In December 2014, Dr. Donald A. deGrange observed Plaintiff, and his medical examination revealed tenderness, limited range of motion, and positive straight leg-raising on the right, but no motor or sensory deficits (Tr. 1319). Dr. deGrange indicated that Plaintiff was not at maximum medical improvement and could lift 25 occasionally, but should avoid repetitive bending and twisting, and needing to change position every 30 minutes (Tr. 1320-1321). On January 20, 2015, imaging of Plaintiff's lumbar spine showed degenerative disc disease with protrusion at L5-S1 with foraminal encroachment bilaterally (Tr. 1295).

In March 2015, Plaintiff showed degenerative disc disease at L5-S1 with additional changes at L4-L5, and bony alignment was otherwise within normal limits (Tr. 984). On June 12, 2015, Plaintiff underwent L5-S1 fusion without complication (Tr. 987, Tr. 1247). In July 2015, a CT Scan of the lumbar spine showed post-operative changes, but no evidence of superior disc degeneration (Tr. 1006). On September 10, 2015, a repeated CT Scan showed mild loss of disc height at L5-S1 and the remaining spaces were well maintained (Tr. 1008). In December 2015, January 2016, and March 2017 imagining showed stable fusion (Tr. 1010, 1012, 1014). In October 2015, Dr. deGrange observed Plaintiff and indicated that he showed limited range of motion with some decreased sensation to the left lower extremity and positive right straight leg raising, but no gait abnormalities or motor deficits and symmetric reflexes (Tr. 1327-28). Dr. deGrange also indicated that Plaintiff required a position change every 20 minutes with increase in full-time work over two to three months (Tr. 1329).

In January 2016, Sejal Patel, NP observed that Plaintiff had very stiff movements and that his range of motion decreased with forward flexion, but that he is able to heel, toe and tandem walk without significant issues and his motor and sensory examinations are grossly intact (Tr. 1257). In April 2016, Trisha Middleton, DPT, CMPT, completed an assessment/functional capacity evaluation, and indicated that Plaintiff could perform light exertional jobs with frequent stooping, standing, walking, occasional squatting, but no bending, kneeling, climbing, or crawling (Tr. 1511-1512).  Also, in April 2016, Dr. Kennedy indicated that Plaintiff could not work in any gainful capacity on a permanent basis due to Plaintiff's description of pain and inability to perform routine activities (Tr. 1300, 1401). In October 2016, Plaintiff complained of lower thoracic pain, and reported no benefit from physical therapy (Tr. 1035-1036).  Dr. Gutmann observed mild lower spine tenderness (Tr. 1036).

In May 2017, Rachel Feinberg, MD observed a non-antalgic gait, tenderness to palpation, and no deficits of reflex, motor, or sensation of the bilateral lower extremities (Tr. 1535).  In July 2017, consultative examiner Raymond Leung, M.D. noted a minimal limp with a stiff gait, but that Plaintiff was able to tandem, heel, and toe walk (Tr. 1390). Plaintiff demonstrated limited bilateral straight leg raising and limited range of motion on flexion, but with normal sensation and 4+/5 strength in the bilateral lower extremities (Ex. 1389-1390).  Also, in July 2017, Plaintiff had a myelogram, which treating surgeon, Dr. Kennedy, noted showed solid fusion at L4-5 (Tr. 1539).  In August 2017, Plaintiff reported moderate back pain without radiation and without improvement or benefit from physical therapy (Tr. 1572).  Also, in August 2017, state agency medical consultant,

Frank Mikell, M.D. completed a Disability Determination Explanation, and indicated that Plaintiff could occasionally climb ladders, ropes, or scaffolds and frequently stoop kneel, crouch, and crawl (Tr. 678-701).  Dr. Mikell evaluated Plaintiff's impairments under Listings 1.04 (Spine Disorders) and 5.07 (Short Bowel Syndrome) (Tr. 684) and recommended a light work capability (Tr. 688).

In December 2017, state agency medical consultant, Lenore Gonzalez, M.D. completed a Disability Determination Explanation, indicating that Plaintiff could frequently climb ramps, but not ladders, ropes, or scaffolds and frequently stoop, kneel, crouch, and crawl, but should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards (Tr. 705-717, 718-730). Dr. Gonzalez evaluated Plaintiff's impairments under Listings 1.04 (Spine Disorders) and 5.07 (Short Bowel Syndrome) (Tr. 684) and recommended a light work capability (Tr. 716).

On January 29, 2018, imagining of the lumbar spine showed postoperative changes, but with only mild degenerative changes at L2-3, L3-4, and L4-5 and only slight retrolisthesis of L5 on S1 unchanged with extension and flexion (Tr. 1396).  In April 2018, Dr. Gutmann provided a referral to pain management (Tr. 1579).  In May 2018 and June 2018, Dr. Kennedy again indicated that Plaintiff could not work in any gainful capacity on a permanent basis due to Plaintiff's description of pain and inability to perform routine activities without significant aggravation of pain (Tr. 1399, Tr. 1401).  Also, in May 2018, Dr. Kennedy indicated that Plaintiff's straight leg raising is negative and his motor and sensory examinations were normal (Tr. 1399, Tr. 1538).

*Additional Medical Records Submitted to the Appeals Council*

On April 15, 2020, Plaintiff's counsel submitted additional medical records to the Appeals Council (Tr. 12-626).  These records were from Alton Physical Therapy, Missouri Baptist Hospital, and Premise Health.  The Alton Physical Therapy records are dated from September 21, 2015 to March 18, 2016 (Tr. 13-188).  The Missouri Baptist Hospital records are dated from March 20, 2015 to January 25, 2016 (Tr. 191-570).  The Premise Health records are dated from September 2013 to September 9, 2016 (Tr. 572-626).

## Analysis

Plaintiff raises two arguments in favor of remand: (1) that the ALJ erred in relying on his lay medical opinion rather than calling a physician in evaluating whether Plaintiff met or equaled Listing 1.04(A), and (2) that the Appeals Council erred in not considering the additional evidence Plaintiff submitted in April 2020 (Doc. 15, p. 3).  The Court will address Plaintiff's final argument first.

### *Additional Evidence*

Plaintiff argues that the Appeals Council failed to consider additional evidence his counsel submitted for review on April 15, 2020 (Doc. 15, p. 7).  Specifically, Plaintiff objects to the treatment of three sets of medical records he submitted from Alton Physical Therapy, Missouri Baptist Hospital, and Premise Health (Tr. 12-626) (hereinafter referred to as the "New Medical Records").  Plaintiff claims these records were "new and material" and that the Appeals Council failed to consider or otherwise address them in accordance with 20 C.F.R. § 404.970(c) (Doc. 15, p. 11).

The Alton Physical Therapy records are dated from September 21, 2015 to March 18, 2016 (Tr. 13-188).  Plaintiff argues that these records show positive straight leg tests, limited range of motion, and increasing pain even at the conclusion of physical therapy (Doc. 15, p. 8).  The Missouri Baptist Hospital records are dated from March 20, 2015 to January 25, 2016, with some documents dated through March 30, 2017 (Tr. 191-570). Plaintiff argues that these records describe Plaintiff's preoperative treatment and post-operative care following his 2015 fusion surgery, and specifically reflect Plaintiff's continuing complaints of pain years after the surgery and a general investigation into a diagnosis of "post laminectomy syndrome."  (Doc. 15, pp. 8-9).  Finally, the Premise Health records are dated from September 2013 to September 9, 2016 (Tr. 572-626). Plaintiff alleges that these records indicate that Plaintiff was still taking Percocet which, according to statements from his worker's compensation file, meant Plaintiff was prohibited from working on the days he had taken the Percocet (Doc. 15, p. 10).

The regulation governing review by the Appeals Council, 20 C.F.R. § 404.970, provides in relevant part:

> (a) The Appeals Council will review a case if—
>                              . . .
> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.
>
> (b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:
> (1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier . . .

(c) If you submit additional evidence that does not relate to the period on or before the date of the administrative law judge hearing decision as required in paragraph (a)(5) of this section, or the Appeals Council does not find you had good cause for missing the deadline to submit the evidence in § 404.935, the Appeals Council will send you a notice that explains why it did not accept the additional evidence and advises you of your right to file a new application. The notice will also advise you that if you file a new application within 6 months after the date of the Appeals Council's notice, your request for review will constitute a written statement indicating an intent to claim benefits under § 404.630. If you file a new application within 6 months of the Appeals Council's notice, we will use the date you requested Appeals Council review as the filing date for your new application.

20 C.F.R. § 404.970(a)-(c).

Preliminary, the Court observes that the New Medical Records at Tr. 12-626 cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Indeed, records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994); *see also*, *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Moreover, because Appeals Council orders concerning additional evidence are not final decisions of the Commissioner, judicial review is limited. *See* 20 C.F.R. § 404.981 (When the Appeals Council denies a request for review, the decision of the ALJ becomes the final decision of the Commission, and that decision is the one reviewed by the Court); *Perkins v. Chater*,

107 F.3d 1290, 1294 (7th Cir. 1997) (Absent legal error in applying 20 C.F.R. § 404.970(b), the Appeals Council's decision whether to review denial of social security benefits after submission of new evidence is discretionary and unreviewable).

Nevertheless, the Court may consider the issue of whether an Appeals Council's order refusing to consider additional evidence was a mistake of law. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015); *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012). The Seventh Circuit in *Stepp* and *Farrell* instructs that judicial review of the Appeals Council's refusal to consider additional evidence depends on the basis articulated by the Appeals Council for refusing to consider the additional evidence.[5] If the Appeals Council refuses to consider the additional evidence because it finds that the evidence is not "new and material", then the Court can review that conclusion for legal error. *Stepp*, 795 F.3d at 722 (citing *Farrell*, 692 F.3d 767); *see also Musonera v. Saul*, 410 F.Supp. 3d 1055, 1058 (E.D. Wis. 2019). However, if the Appeals Council determines that the evidence is "new, material, and time-relevant" but ultimately denies review because "the record — as supplemented — does not demonstrate that the ALJ's decision was 'contrary to the weight of the evidence'", then the Appeals Council's decision is "unreviewable." *Stepp*, 795 F.3d at 722 (citing *Perkins*, 107 F.3d at 1294); *see also Musonera*, 410 F.Supp. 3d at 1058-1059.

---

[5] These decisions considered the old version of § 404.970, which was amended effective January 17, 2017, *see* 81 FR 90987, but various district courts have held these opinions are still applicable under the current version of the regulation. *See Steven D.A. v. Commissioner of Social Security*, 2018 WL 3438856, at *7 (S.D. Ill. July 17, 2018) ("The new regulation does not make a substantive change, but simply incorporates the Seventh Circuit's understanding of materiality, i.e., the additional evidence would be likely to change the outcome of the decision; *see also Musonera v. Saul*, 410 F.Supp.3d 1055, 1061-62 (E.D. Wis. 2019); *Billy C. on behalf of B.D.C. v. Commission of Social Security*, 2019 WL 6195014, at * 7 (C.D. Ill. Oct. 29, 2019).

While various district courts in this Circuit have found that *Stepp* and *Farrell* are still applicable under the current version of the regulation, one district court recently questioned whether the *Stepp/Farrell* analysis is still applicable in cases involving Section 404.970(c) because the older version of the regulation did not contain an equivalent paragraph. *See Patricia Kay M. v. Commissioner of Social Security*, 2019 WL 3997087, at * 5 (S.D. Ill. Aug. 23, 2019). There, the district court reasoned that the new subsection (c) placed "an affirmative duty on the [Appeals] Council to state that it did not accept the new evidence where that happens, and to explain why." *Patricia Kay M.*, 2019 WL 3997087, at *5. In so finding, the Court reasoned that *Steep* and *Farrell*'s requirement that the district court must first determine the basis for why the Appeals Council accepted or rejected the new evidence was no longer necessary. *Id.* at *5. Instead, even when faced with ambiguous language from the Appeals Council (*i.e.,* the decision did not clearly articulate the reason it rejected the new evidence), the *Patricia Kay M.* Court declined juridical review because the Appeals Council did not explicitly state that it was rejecting the evidence under subsection (c). *Id.* at *5-6.

Other district courts have likewise found the *Stepp/Farrell* distinction unworkable as applied to the revised regulation, but ultimately conducted a merits review of the Appeals Council's decisions. *See Lawson v. Saul*, 2020 WL 2836775, at *9 (N.D. Ill. Jun. 1, 2020); *Teresa F. v. Saul.*, 2019 WL 2949910, at *9 (S.D. Ind. Jul 9, 2019); *Musonera v. Saul*, 410 F.Supp.3d 1055, 1061-1063 (E.D. Wis. 2019). Here, the Appeals Council's decision was silent as to the New Medical Records, and the Appeals Council did not send Plaintiff "a notice that explained why it did not accept the additional evidence" under 20 C.F.R. §§

14

404.970(c) and 416.1470(c).  If the Court accepts the reasoning from *Patricia Kay M.*, that paragraph (c) imposes an affirmative duty on the Appeals Council to state that it did not accept the new evidence where that happens, then here, the Appeals Council's silence suggests that the Appeals Council *did* consider the New Medical Evidence, but still denied review because it found the new evidence would not change the outcome of the ALJ's decision.  Such decision would be unreviewable by this Court.

However, the Appeals Council's silence here is troubling because the Council did specifically address and accept two other exhibits submitted by Plaintiff's counsel as additional evidence, ultimately incorporating those exhibits into the record (Tr. 1; Tr. 5).[6] However, the notice (Tr. 1) and May 6, 2020 Order (Tr. 5) did not address the New Medical Records submitted.  While the Appeals Council is "free to deny review without explaining its reasoning" *see Stepp v. Colvin*, 795 F.3d 711, 725 n. 7 (7th Cir. 2015) (citing *Damato v. Sullivan*, 945 F.2d 982, 988-89 (7th Cir. 1991)), the Court is not convinced that the Appeals Council's silence as to the New Medical Records mandates the conclusion that the Appeals Council accepted the new evidence.  Instead, and in light of the Appeals Council's explicit acceptance of Plaintiff's other evidence, it is plausible that the Appeals Council determined that the New Medical Records were not qualifying under the regulation, but otherwise failed to issue a notice in accordance with paragraph (c).

---

[6] This additional evidence included Exhibit 16B and Exhibit 18E (Tr. 5).  Exhibit 16B is Plaintiff's three-page Appeals Council request (Tr. 810-812).  Exhibit 18E is Plaintiff's counsel's three-page argument statement raising specific issues for the Appeals Council's consideration (Tr. 978-980).

The Seventh Circuit has previously cautioned that the Appeals Council should articulate its reasoning as to these issues in all fairness to the party appealing the ALJ's decision, and to avoid the confusion concerning the additional evidence:

> While we have held that the Appeals Council may deny review without articulating its reasoning, *e.g., Damato v. Sullivan,* 945 F.2d 982, 988–89 (7th Cir.1991), that holding in no way contradicts the requirement we enforce today that the Council must identify in a sufficiently clear manner which evidence (if any) it evaluated in reaching its decision to decline plenary review. We once again emphasize, however, that "we neither encourage denying requests for review without articulating the reasoning nor approve of the same," and remind the Commissioner that, "in all fairness to the party appealing the ALJ's decision, the Appeals Council should articulate its reasoning." *Id.* at 989 n. 6. Perhaps even more important than fairness to claimants, if the Council were to explain its reasoning—if only briefly—much of the confusion that we grapple with in this appeal relating to the identification of evidence that the Council considered might be avoided.

*Stepp*, 795 F.3d at 725 n. 7; *see also Musonera*, 410 F.Supp. 3d at 1062 ("While the AC is free to deny review without explaining its reasoning, the Court should not absent explanation presume that the Council considered the evidence presented to it and dispense with its own review."); *in accord Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (neither the Court, nor the Commissioner's lawyers may fill in the gaps of an ambiguous decision).

Therefore, the Appeals Council's ambiguity favors judicial review here. *See Musonera*, 410 F.Supp.3d at 1062. For the Appeals Council to review a case based on additional evidence, the evidence must be "new, material, and relate[d] to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Seventh Circuit has suggested that evidence is material "if it creates a 'reasonable probability that the Commissioner would have reached a different conclusion had the

evidence been considered.'"  *McFadden v. Berryhill*, 721 Fed. Appx. 501, 506 (non-precedential) (citing *Stepp*, 795 F.3d at 725 (quoting *Perkins*, 107 F.3d at 1296)).

Here, the New Medical Evidence fails to meet this standard.  The new records generally cover a shorter period of time (2013-2017) than the evidence considered by the ALJ, which generally covered 2014-2018, and was supplemented by Plaintiff's testimony in 2019.  The new records are also largely reflective of information already in the record and considered by the ALJ.  Plaintiff argues that the New Medical Evidence is material because the records indicate positive straight leg tests, limited range of motion, increasing pain, ineffectiveness of physical therapy, continuing pain, and Plaintiff's need to take Percocet which can disqualify him from working with his former employer (Doc. 15, pp. 8-10).  However, this information is consistent with the evidence that was in the record and considered by the ALJ.  Specifically, the ALJ referenced Plaintiff's positive straight leg tests and increasing pain, his continued need for Percocet, and statements that physical therapy was ineffective (*See* Tr. 637-640)[7].

Given that the New Medical Evidence is reflective of information already in the record and considered by the ALJ, Plaintiff has failed to show a reasonable probability that consideration of the New Medical Evidence would have changed the outcome of the ALJ's decision.  *See McFadden*, 721 Fed.Appx. 501, 506 (7th Cir. 2018) (Finding no error

---

[7]At Tr. 637, the ALJ referenced that Plaintiff was still taking Gabapentin and Percocet as prescribed by his primary care provider, and that the medications caused him to experience dizziness, drowsiness, and an upset stomach.  The ALJ referenced Plaintiff's continuing complaints of pain, his positive straight leg tests, and limited range of motion throughout Tr. 637-640.  The ALJ also referenced Plaintiff's physical therapy, and at Tr. 639, the ALJ stated that "in August 2017, [Plaintiff] reported moderate back pain without radiation and without improvement or benefit from physical therapy."

when the Appeals Council rejected evidence that plaintiff believed was "new and material" because the evidence bolstered the ALJ's conclusions and "leads us to believe that the Commissioner would maintain her determination that [plaintiff] was not disabled."). Therefore, any error by the Appeals Council in failing to expressly consider or reject the New Medical Evidence would be harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (An ALJ's error is harmless where, having looked at the evidence in the record, the court "can predict with great confidence what the result on remand will be."); *see Mueller v. Colvin*, 524 Fed.Appx. 282, 285 (7th Cir. 2013) ("[t]he absence of a rationale may constitute harmless error if the agency's decision is overwhelmingly supported by the record and thus remand would be pointless.").

## *ALJ Step Three Findings*

Turning to Plaintiff's final issue, Plaintiff alleges that the ALJ erred by not calling a medical expert, but instead applied "his own lay medical beliefs" to determine that Plaintiff did not meet or equal Listing 1.04(A). Listing 1.04(A) provides:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, listing 1.04(A). Plaintiff argues that the ALJ failed to call a medical expert to opine on Plaintiff's medical records, but instead applied his own lay medical beliefs and assessed Plaintiff's conditions by applying the ALJ's knowledge

of what is "typically associated" with Listing 1.04(A) without evaluating the specific criteria of Listing 1.04(A) (Doc. 15, pp. 5-6).  Plaintiff references the following statement made by the ALJ in his opinion:

> While there are occasional references to positive straight leg raising, reduced range of motion, and tenderness to palpation, treating sources fail to regularly document or acknowledge others [sic] signs typically associated with chronic, severe musculoskeletal pain such as muscle atrophy, persistent or frequent recurring muscle spasms, neurological deficits (motor, sensory, or reflex loss) or other signs of nerve root impingement.

(Tr. 640).  Plaintiff argues that this finding reveals what conditions the ALJ assumed or expected for Plaintiff's conditions but were otherwise unsupported by medical opinions and therefore unsupported by substantial evidence (Doc. 15, p. 5).  In sum, Plaintiff argues that the ALJ impermissibly "played doctor" by interpreting Plaintiff's medical records himself when a medical expert was needed (Doc. 14, pp. 6-7).

However, Plaintiff ignores the findings of state-agency medical consultants Dr. Mikell and Dr. Gonzalez (Tr. 678-701, Tr. 705-717).  Dr. Mikell and Dr. Gonzalez both expressed opinions as to whether Plaintiff's impairments medically equaled Listing 1.04 and found that Plaintiff should be limited to a restricted range of light work (Tr. 688, Tr. 716).  Defendant argues that Dr. Mikell and Dr. Gonzalez would not have reached these findings if they believed Plaintiff's impairments met or medically equaled Listing 1.04 or any other listing (Doc. 20, p. 6).  As such, Defendant contends that these opinions supplied substantial evidence to support the ALJ's Step Three finding. The Court agrees.

A finding that a claimant's condition meets or equals a listed impairment means that the claimant is presumptively disabled.  In order to be found presumptively

disabled, the claimant must meet *all* of the criteria in the listing.  20 C.F.R. §416.925(d).

Plaintiff bears the burden of showing that his condition meets or equals the listed

impairment.  *Maggard v. Apfel*, 167 F.3d 376, 379-380 (7th Cir. 1999).  In doing so, Plaintiff

must show **th**at he meets all of the requirements of the listing.  *Filus v. Astrue*, 694 F.3d

863, 868 (7th Cir. 2012); *see also Knox v. Astrue*, 327 Fed. App. 652, 655 (7th Cir. 2009).

Further, the ALJ is not required to obtain an expert opinion as to whether a listing is met

where state agency consultants opined that listing was not met. *Buckhanon ex rel. J.H. v.

Astrue*, 368 Fed. Appx. 674, 679 (7th Cir. 2010).  Instead, the ALJ can assume counsel put

on the best case.  *Id.* (where plaintiff already knew that state agency consultants said she

not disabled, and she did not seek another opinion or ask ALJ to recontact them, can

assume that she decided that another opinion would not help her).

Here, the ALJ adequately supported his step three finding in concluding that

Plaintiff's impairments did not meet the requirements of Listing 1.04.  In discussing

Listing 1.04, the ALJ concluded that "the medical evidence does not establish the degree

of nerve root compression or associated signs of neurological-anatomic distribution of

pain, limitation of motion, motor loss, muscle atrophy, relax or sensory loss, or spinal

stenosis or arachnoiditis needed to meet or medically equal in severity the requirements

for a disabling disorder of the spine as defined in Section 1.04 of Appendix 1."  (Tr. 636).

He also specifically stated that "no acceptable medical source designated to make

equivalency findings had concluded that the claimant's impairment(s) medically equal a

listed impairment" (Tr. 636).

State-agency medical consultants Dr. Mikell and Dr. Gonzalez were medical experts designated by the Commissioner who expressed an opinion as to whether Plaintiff's impairments medically equaled Listing (Tr. 683-86, 702-03, 710-14). Both doctors considered whether Plaintiff satisfied Listing 1.04 (Tr. 683-86, 702-03, 710-14). Moreover, both provided an RFC opinion limiting Plaintiff to a restricted range of light work (Tr. 683-86, 702-03, 710-14). They would not have reached this finding if they believed that Plaintiff's impairments met or medically equaled Listing 1.04 or any other Listing. Plaintiff did not otherwise seek another opinion as to the requirements of this listing and fails to present arguments as to every requirement in Listing 1.04, which is his burden. *Filus*, 694 F.3d at 868; *see also Knox*, 327 Fed. App. at 655 (Finding no error when the ALJ did not refer to a specific listing at step three but two state-agency physicians concluded that plaintiff's impairments did not meet or medically equal a listing, and there was no medical opinion to the contrary); *in accord Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (it is Plaintiff's burden, not the ALJ's to prove that he was disabled).

In the end, Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified any error requiring remand. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## <u>Conclusion</u>

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**SO ORDERED.**

Dated:  September 24, 2021

_____
DAVID W. DUGAN
United States District Judge